IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| STACEY JOHNSON,<br><br>    Plaintiff,<br><br> v.<br><br>XAVIER BECERRA, as Secretary of the Department of Health & Human Services; the UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, a federal department; CAROLE JOHNSON, as Administrator of the Health Resources & Services Administration; and the HEALTH RESOURCES & SERVICES ADMINISTRATION, a federal agency,<br><br>    Defendants. | CV-22-55-GF-BMM<br><br><br>**O**RDER |

## INTRODUCTION

Plaintiff Stacey Johnson ("Johnson") has brought a claim against the U.S. Department of Health & Human Services ("DHHS" or "Agency"), the Health

Resources & Services Administration, and their heads (collectively, "Agency Defendants"). Johnson now moves for a stay of a final agency decision under the Administrative Procedure Act ("APA"), or, in the alternative, a preliminary injunction. (Doc. 9.) The Court conducted a hearing on September 29, 2022.

## FACTUAL AND LEGAL BACKGROUND

Johnson is an Advanced Practice Registered Nurse who enrolled in DHHS's National Health Service Corps ("Corps"). (Doc. 10 at 8.) Congress created the Corps as part of the Emergency Health Personnel Act of 1970. Pub. L. 91-623. The Corps uses scholarships and grants to incentivize health care professionals to work in underserved parts of the United States. Under its Loan Repayment Program ("Program"), the Corps provides funding to students in health professions in exchange for a commitment to serve a term of years at a Corps-approved site. 42 U.S.C.A. § 245*l*–1 *et seq*.

Seeking to repay part of her approximately $215,000 in student loans, Johnson applied to and was accepted by the Program. (Doc. 10 at 9.) Johnson began working at Alluvion Health Center ("Alluvion") in Great Falls in early 2020. (*Id.* at 8.) Alluvion is a Corps-approved site. (*Id.* at 9.) Johnson alleges that Alluvion terminated her supervisor for blowing the whistle on Alluvion's misappropriation of federal funds. (*Id.*) Alluvion terminated Johnson soon after, allegedly because Alluvion thought that Johnson had assisted in the supervisor's

whistleblowing. (*Id.*) Johnson withdrew her Program application given that she was no longer approved at a Corps-approved site. (*Id.*)

Johnson took a new job in May 2020 as a Nurse Practitioner Indian Family Health Clinic - Great Falls ("IFHC"), another Corps-approved site. (*Id.*) DHHS approved her new Program application. (*Id.* at 9–10.) Johnson and DHHS entered into a Program contract on July 1, 2020. (*Id.* at 10.) Under the contract, DHHS would pay $50,000 toward Johnson's student loan debt, provided that Johnson completed two years of full-time clinical practice at a Corps-approved site. (*Id.*) Johnson received the Program funds on September 25, 2020. (*Id.*)

Johnson alleges that "ethical and legal violations plagued" her second Corps-approved site. IFHC constructively discharged Johnson on October 4, 2020. (Doc. 10 at 10.) She requested termination of her Program contract and tried to return the Program funds the following day, on October 5, 2020. (*Id.*) The Public Service Health Act authorizes the DHHS Secretary ("Secretary") to terminate Program contracts in limited circumstances. 42 U.S.C. § 254o(c)(2). DHHS denied Johnson's termination request.

Johnson requested a waiver of her service obligation. (Doc. 10 at 11.) Johnson argued that she could not comply with the terms of her Program contract because no other Corps-approved site lies within commuting distance of Great Falls. (*Id.*) DHHS denied Johnson's waiver request on March 31, 2022. (*Id.*)

Johnson requested and was granted several temporary suspensions due to the COVID-19 pandemic from April 2021 through April 2022. (*Id.*) These temporary suspensions ended on April 4, 2022. (*Id.*)

Johnson continues to hold the $50,000 in Program funds "with an intent to return the grant." (*Id.*) DHHS calculated Johnson's "projected breach date" to be April 5, 2022. (*Id.*) Johnson will be required to take the following actions upon a DHHS determination that places Johnson in default: (1) return the $50,000 grant; (2) pay treble damages; (3) and pay interest at the maximum legal rate (9.375% annually), compounded daily. (*Id.* at 11–12.) Johnson owes $172,054.79 by DHHS's calculations. (*Id.* at 12.) Interest stands to accrue forward on this amount from the projected breach date of April 5, 2022. (*Id.*) At the annual interest rate of 9.375%, compounded daily, Johnson faces $16,908.16 every year in interest payments. (*Id.*) Johnson would have to pay $1,409.00 a month to avoid increasing the principal. (*Id.*)

DHHS refuses to accept repayment of the grant principal before it declares Johnson to be in default. (*Id.*) Johnson asked DHHS to stay its assessment of interest pending judicial review. (Doc. 10-5.) DHHS denied this request. (*Id.*) Johnson filed this federal court action on June 6, 2022. (Doc. 1.) Johnson alleges that Agency Defendants have violated the APA in the following two ways: (1) that DHHS's final decision violates the Eighth Amendment's Excessive Fines Clause;

4

and (2) that DHHS based its denial of Johnson's waiver request upon a statutory misinterpretation and departure from the Agency's own regulations, in violation of the APA, 5 U.S.C. § 706(2)(A) and (B). (*Id.* at 13, 15–16.)

Johnson now asks the Court to stay the final agency decision, or, in the alternative, to grant a preliminary injunction to prevent the accrual of interest on Johnson's Program grant pending judicial review. (Doc. 10 at 7.) Agency Defendants oppose Johnson's Motion. (Doc. 14.)

## LEGAL STANDARDS

District courts enjoy discretion regarding the grant or denial of a preliminary injunction. *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). A preliminary injunction represents an extraordinary remedy that a court should never award as a matter of right. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must establish the following factors: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20. "[H]arm to the opposing party and the public interest[] merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The APA provides additionally that an agency "may postpone the effective date of action taken by it, pending judicial review" when "justice so requires." 5

U.S.C. § 705 ("§ 705"). "On such conditions as may be required and to the extent necessary to prevent irreparable injury," a reviewing court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." *Id.*

## DISCUSSION

Johnson argues that her claims require a stay under § 705, or, in the alternative, that they merit a preliminary injunction. Agency Defendants counter that Johnson's claims fail under both standards.

### I. APA § 705 Stay Test.

Section 705 of the APA provides that courts may stay agency decisions where necessary to prevent "irreparable injury." § 705. The remedy must be "necessary and appropriate." *Id.* Johnson asks the Court to stay DHHS's final determination that Johnson stands in breach of contract thereby preventing the accrual of interest on the principal and any additional damages assessed. (Doc. 10 at 13.) Johnson asserts that she will experience irreparable injury because interest will accrue while she seeks judicial review with no way to recover this interest. (*Id.* at 13–14.)

Agency Defendants argue that the *Winter* preliminary injunction standard governs § 705 stay claims. *Amalgamated Transit Union, Int'l v. U.S. Dep't of Labor*, No. 2:20-cv-00953- KJM-DB, 2021 WL 6002212, *6 (N.D. Cal. Dec. 20,

2021). Agency Defendants also argue that Johnson would not be eligible for a stay under § 705 because she will not suffer irreparable harm absent a stay. (Doc. 14 at 28.)

Johnson has failed to establish, as discussed below in the section on the second *Winter* element, that she will experience irreparable harm unless the Court issues a stay or preliminary injunction. Johnson does not meet the § 705 requirements for a stay.

## II. *Winter* Preliminary Injunction Test.

### a. Irreparable Harm.

"Because it is dispositive, the Court begins with the issue of irreparable harm." *Wooten v. BNSF Ry. Co.,* No. CV 16-139-M-DLC-JCL, 2017 WL 1066630, *2 (D. Mont. Mar. 16, 2017) (citation omitted). The alleged irreparable harm must be likely and not just possible. *Winter*, 555 U.S. at 24. Johnson must "do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citing *L.A. Mem. Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

### i. Placement in Default.

Agency Defendants contend that Johnson has failed to make a showing of irreparable harm because Johnson currently "has no monetary obligation" to DHHS. (Doc. 15 at 14.) The undisputed facts establish that DHHS has not formally placed Johnson in default; that Johnson has not elected to enter voluntary default on her service obligation; and that DHHS cannot seek repayment for one year after default. (Doc. 14 at 9, 16.) Johnson still can perform under the contract by working at a Corps-approved site. (*Id.* at 16.) Johnson could propose to DHHS that a new site be added to the list of Corps-approved sites. (Doc. 15 at 9.) Johnson also could receive a full or partial waiver of the grant amount if "changed circumstances allowed for qualification." (Doc. 14 at 16.)

Johnson, rather than attempting to refute this evidence, argues instead that she cannot comply without extreme hardship. (Doc. 10 at 18.) Johnson asserts that no Corps-approved site, aside from the two sites in which she already worked, lies "within commuting distance" of Great Falls. (Doc. 1 at 9.) The Court finds unconvincing Johnson's claim of undue hardship for two reasons.

First, the Program contract requires participants to serve in the Shortage Area to which the Secretary assigns them. This assignment can be located in any U.S. state or territory. Johnson agreed to these terms when she signed the Program

contract. She cannot now avoid her service obligation merely because she might have to relocate to fulfill that obligation.

Second, employment at a Corps-approved site within commuting distance may be available to Johnson. A search of the Health Workforce Connector for active Corps-approved sites in Montana returned fourteen currently available nurse practitioner positions across the state as of November 14, 2022. HEALTH RESOURCES & SERVS. ADMIN., *Health Workforce Connector*, https://connector.hrsa.gov/connector/search (last visited Nov. 14, 2022). The two closest positions lie in Heart Butte and Browning, roughly 117 and 126 miles from Great Falls, respectively. *Id.* A search for nurse practitioner positions also returned seventeen active Corps-approved sites within 100 miles of Great Falls and seventy-nine active Corps-approved sites across Montana. *Id.* The Court infers that some of these sites have posted and filled additional nurse practitioner positions since October 4, 2020, the date of Johnson's discharge from her second site. Future openings, similarly, likely will become available across at least some of these sites.

The Court acknowledges that the COVID-19 pandemic has imposed significant employment-related challenges, particularly in 2020 and 2021. Johnson has failed to engage, however, in a good-faith effort to seek employment at a Corps-approved site. Johnson has neglected to monitor openings at Corps-approved sites, including in the Great Falls area, in the last two years. She has

9

failed to apply for open positions at Corps-approved sites. Johnson stated during the preliminary injunction hearing that she currently works at the Montana Arthritis Center of Great Falls ("MAC"). Johnson has failed to request that DHHS add MAC or any other Great Falls-area employer as a Corps-approved site.

The Court agrees with Agency Defendants that Johnson has not shown irreparable harm. Johnson is not yet in default of her Program obligations. DHHS would have to wait a full year between any placement in default and seeking repayment from Johnson. Johnson still could comply with the contract by working at a Corps-approved site. Johnson's prospective economic harm proves avoidable and remote rather than imminent and irreparable. *Winter*, 555 U.S. at 24; *Caribbean Marine Servs. Co., Inc.*, 844 F.2d at 674.

### ii. Accrual of Interest During Pendency of Litigation.

Johnson contends that she will face irreparable harm "if the Agency proceeds to calculate her default date as April 5, 2022." (Doc. 10 at 15.) Johnson argues that the accrual of interest during the litigation means that she would experience irreparable harm whether she wins or loses this federal-court action. Johnson estimates that she stands to owe an additional $16,236.85 in interest on the original $50,000 if she wins after three years of litigation. (*Id.* at 17.) If she loses after three years, Johnson estimates that she would owe $227,927.33, more than $50,000 over the amount she owes by DHSS' calculated sum of $172,054.79 for

grant principal and damages. (*Id.*) Agency Defendants dispute this claim. Agency Defendants argue that the Court could invalidate DHHS's action and thereby eliminate Johnson's monetary liability if Johnson prevails on the merits. (Doc. 14 at 15–16.)

The Court finds plausible Johnson's concern that interest could accrue even if she were to prevail. A successful Eighth Amendment challenge to the statutory treble damages provision, in theory, could invalidate the damages while leaving the original $50,000 grant amount. The Court lacks sufficient information at this stage of the litigation to evaluate the parties' contentions regarding the accrual of interest on the grant principal if Johnson were to prevail.

This unresolved question of fact proves inappropriate for resolution at the preliminary injunction stage. The accrual of interest on the grant principal during the pendency of the litigation, if established, could be appropriately addressed in a final decision on the merits.

   **iii. Whether Economic Harms Can Be Considered Irreparable.**

Agency Defendants additionally assert that Johnson would not face irreparable harm even if she *were* in repayment status because Johnson has alleged economic harms. Economic harms are "typically not considered 'irreparable'" because money damages can be repaid. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). Johnson counters that her economic harms still qualify as "irreparable"

under the APA because money damages remain unavailable as a remedy. (Doc. 10 at 16–17.)

The Court agrees with Johnson that she could allege irreparable economic harms relating to her APA claims. "[W]here parties cannot typically recover monetary damages flowing from their injury—as is often the case in APA cases—economic harm can be considered irreparable." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021). The Record does not currently support a finding of irreparable economic harm. Changes to Johnson's circumstances could, however, render her economic harms imminent and irreparable in the future.

### b. Likelihood of Success on the Merits.

Johnson argues that she is likely to prevail on the merits of her Eighth Amendment and 5 U.S.C. § 706 claims. The Court analyzes each claim.

Johnson claims that the treble damages assessed by DHHS qualify as "punitive" under the Eighth Amendment. (Doc. 10 at 20.) Johnson asserts that the treble damages are not commensurate with the actual harm caused by her breach. (*Id.* at 21.) She contends that DHHS fine proves "grossly disproportional to the gravity" of her offense, in violation of the Eighth Amendment. *United States v. Bajakajian*, 524 U.S. 321, 337 (1998). Johnson alleges that she breached her contract "to protect her reputation, her medical license, and her family." (*Id.* at 24.)

Agency Defendants respond that the treble damages constitute a valid liquidated damages provision rather than a penalty. (Doc. 14 at 16.) Agency Defendants represent that every court to evaluate whether Corps program damages constitute penalties has determined that the damages are not penalties. (*Id.*)

Johnson also claims that DHHS's final decision contravenes statutes and agency regulations. Johnson argues that DHHS's denial of her waiver request proved arbitrary and capricious because the denial letter stated that the Agency was "unable to modify the damages," which "are mandated by statute." (Doc. 10 at 26 (citing Doc. 10-7 at 5).) Johnson asserts that DHHS should have concluded that a partial waiver was available to her.

Agency Defendants assert that DHHS's denial of Johnson's waiver request comports with "decades of prior case precedents" and falls within the Agency's discretion. (Doc. 14 at 18.) The Program allows waivers only where compliance would be "impossible," "would involve extreme hardship," or "would be unconscionable." 42 U.S.C.A. § 254o(d)(2). Agency Defendants argue that DHHS evaluated Johnson's "licensure, age, future earning potential, and financial condition" in making its determination that Johnson does not qualify for a waiver. (Doc. 14 at 21.) Agency Defendants also allege the presence of "scores of eligible health care facilities within and near Great Falls" and that Johnson is "fully capable of repaying" the grant. (*Id.* at 21–22.) Agency Defendants emphasize the high

13

degree of deference owed to DHHS's interpretation of its own regulations. (*Id.* at 21.)

The Court declines to address whether Johnson is likely to prevail on the merits of her claims due to Johnson's failure to establish the irreparable harm element necessary for a preliminary injunction.

### c. Balance of Equities & Public Interest.

Johnson argues that preventing federal agencies from assessing interest against individuals seeking "viable judicial relief" furthers the public interest. (Doc. 10 at 28.) Agency Defendants focus on the statutory goals of the Program. Agency Defendants warn that the Program would lose its ability to incentivize the provision of medical services in rural areas if Johnson were to prevail. (Doc. 14 at 25.) Agency Defendants argue that the loss of their ability to offer these incentives ultimately could lead to a lack of adequate medical services in rural areas and harm to the public interest. (*Id.*)

The Court declines to address whether the balance of the equities and public interest weigh in favor of Johnson or Agency Defendants. Johnson's failure to demonstrate irreparable harm precludes any grant of a preliminary injunction. *Winter*, 555 U.S. at 24; *Wooten*, 2017 WL 1066630, at *2.

**ORDER**

Accordingly, **IT IS ORDERED** that Johnson's Motion for a Preliminary Injunction (Doc. 9) is **DENIED.**

Dated this 14th day of November, 2022.

Brian Morris, Chief District Judge
United States District Court