# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| STACEY JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, as Secretary of the Department of Health & Human Services; the UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, a federal department; CAROLE JOHNSON, as Administrator of the Health Resources & Services Administration; and the HEALTH RESOURCES & SERVICES ADMINISTRATION, a federal agency,<br><br>    Defendants. | **CV-22-55-GF-BMM**<br><br>**ORDER** |

## INTRODUCTION

Plaintiff Stacey Johnson ("Johnson") moves for partial summary judgment against the U.S. Department of Health & Human Services ("DHHS"), the Health Resources & Services Administration, and their heads (collectively "Agency Defendants"). (Doc. 33.) Defendants have filed a cross-motion for summary judgment. (Doc. 37.)

## FACTUAL AND LEGAL BACKGROUND

The Court assumes familiarity with the factual background provided in the November 14, 2022 Order (Doc. 27) and will provide a condensed version here. Johnson is an Advanced Practice Registered Nurse who enrolled in DHHS's National Health Service Corps ("Corps"). (Doc. 10 at 8.) Under its Loan Repayment Program ("Program"), the Corps provides funding to students in health professions in exchange for a commitment to serve a term of years in an underserved area at a Corps-approved site. 42 U.S.C.A. § 245*l*–1 *et seq.* Johnson applied to and was accepted by the Corps' Loan Repayment Program (the "Program"). (Doc. 10 at 9.)

Johnson began working at Alluvion Health Center ("Alluvion") in Great Falls in early 2020. (*Id.* at 8.) Alluvion is a Corps-approved site. (*Id.* at 9.) Johnson alleges that Alluvion wrongfully terminated her employment due to an assumed connection to her supervisor's whistleblowing. (*Id.* at 10.) Johnson took a new job at Indian Family Health Clinic - Great Falls ("IFHC"), another Corps-approved site in May 2020. (*Id.*) Johnson alleges that she was constructively discharged from this position on October 4, 2020, because she "refus[ed] to violate the law and her ethical obligations." (*Id.*) Agency Defendants allege that Johnson resigned on October 2, 2020, after her placement on disciplinary leave. (Doc. 38 at 11.)

Johnson and DHHS entered into the Program contract on July 1, 2020. (Doc. 10 at 10.) Under the contract, DHHS would pay $50,000 toward Johnson's student

loan debt, provided that Johnson completed two years of full-time clinical practice at a Corps-approved site. (*Id.*) The last day Johnson could have withdrawn from the Program was September 24, 2020. (*Id.*) Johnson received the grant funds on September 25, 2020. (*Id.*) Johnson has completed 94 days of her 730-day service obligation. (Doc. 38 at 11.) Johnson requested termination of her Program contract and tried to return the funds on October 5, 2020, after leaving her position at IFHC. (Doc. 10 at 10.) DHHS denied this request. (*Id.*) DHHS also denied Johnson's request for a waiver of her service obligation on March 31, 2022. (*Id.* at 11.) Johnson requested and was granted several temporary suspensions due to the Covid-19 pandemic from April 2021 through April 2022. (*Id.*) These temporary suspensions ended on April 4, 2022. (*Id.*)

Johnson continues to hold the $50,000 "with an intent to return the grant." (*Id.*) The agency calculated Johnson's "projected breach date" to be April 5, 2022. (*Id.*) Johnson now owes $183,898.29 by DHHS's calculations, up from $172,054.79 in November 2022. (*Compare* Doc. 38 at 17, *with* Doc. 10 at 12.) Interest has accrued on this amount from the projected breach date of April 5, 2022, forward, compounded daily at a 9.375% annual rate. (*Id.*)

Johnson's Complaint includes two counts, both Administrative Procedure Act ("APA") violations: (I) that DHHS's final decision violates the Eighth Amendment's Excessive Fines Clause; and (II) that DHHS based its denial of her waiver request

upon a statutory misinterpretation and departure from the agency's own regulations. (Doc. 1 at 13, 15.) Johnson has consented to dismissal of Count II. (Doc. 34 at 30.)

Johnson asked DHHS to stay its assessment of interest pending judicial review. (Doc. 10-5.) DHHS denied this request. (*Id.*) Johnson requested a stay of the final agency decision, or, in the alternative, to grant a preliminary injunction. (Doc. 9.) The Court conducted a hearing on Johnston's Motion for Preliminary Injunction on September 29, 2022. (Doc. 19.) The Court denied the preliminary injunction motion on November 14, 2022. (Doc. 27.) Johnson filed a Motion for Summary Judgment on December 16, 2022. (Doc. 33.) Agency Defendants filed a Cross-Motion for Summary Judgment on January 17, 2023. (Doc. 37.) The parties filed their respective Replies on February 16, 2023, and March 2, 2023. (Doc. 43; Doc. 45.) The Court conducted a motion hearing on the parties' cross-motions for summary judgment on April 6, 2023. (Doc. 48.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

**DISCUSSION**

Johnson argues that the fine DHHS seeks to collect from her amounts to an unconstitutional, excessive fine in violation of the Eighth Amendment. Agency Defendants respond that Johnson may not raise an Eighth Amendment claim under the APA, that the Eighth Amendment does not apply to Johnson's circumstances, and that, even if it did, the fine proves constitutional. The Court will consider each argument in turn.

I. **Whether Johnson May Raise an Eighth Amendment Claim Under the APA.**

Section 706(B) of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). The Ninth Circuit has confirmed "[p]laintiffs may bring their challenge . . . under the judicial review provisions of the [APA] as a challenge to a final agency decision that is alleged to violate the Constitution[.]" *Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019).

Agency Defendants assert that Johnson may not use the APA as a vehicle through which to raise an Eighth Amendment claim. Agency Defendants argue that Section 705 of the APA supplies the appropriate standard of review. (Doc. 38 at 20–23.) Agency Defendants highlight that DHHS assessed Johnson's current and estimated future financial resources in determining her eligibility for a waiver. (*Id.*

at 22.) Agency Defendants assert that DHHS's interpretation of its own regulations enjoys a high degree of deference under the APA. (*Id.* at 23.)

The Court agrees with Johnson that the APA proves an appropriate vehicle for her Eighth Amendment Claim. Section 706 of the APA explicitly contemplates challenges to agency decisions alleged to be "contrary to constitutional right." 5 U.S.C. § 706(2)(B). Johnson properly has brought her Eighth Amendment claim "under the judicial review provisions of the [APA] as a challenge to a final agency decision that is alleged to violate the Constitution[.]" *Sierra Club*, 929 F.3d at 694.

## II. Whether the Eighth Amendment Applies to Johnson's Circumstances.

### A. Whether the Eighth Amendment Applies Outside the Context of Criminal Penalties.

The U.S. Supreme Court in *Austin v. United States* evaluated whether the Eighth Amendment's protections extend beyond government monetary exactions related to criminal proceedings. 509 U.S. 602, 607–08 (1993). *Austin* emphasized that the core "purpose of the Eighth Amendment . . . was to limit the government's power to punish." *Id.* at 609.

Agency Defendants contend that Johnson may not raise an Eighth Amendment claim because she "violated no statute, but simply breached her contract." (Doc. 38 at 27.) Agency Defendants argue that the Eighth Amendment only attaches to governmental fines in connection with a crime or statutory violation. (*Id.*)

Agency Defendants' interpretation of the legal standard would remove constitutional protections against grossly disproportionate government exactions so long as a person has violated no law. This argument defies logic and lacks any legal basis. "The notion of punishment, as we commonly understand it, cuts across the division between the civil and criminal law.'" *Austin*, 509 U.S. at 610 (quoting *United States v. Halper*, 490 U.S. 435, 447–48 (1989)). "[T]he question is not, as [Agency Defendants] would have it, whether [a] forfeiture . . . is civil or criminal, but rather whether it is punishment." *Austin*, 509 U.S. at 609; *see also Hudson v. United States*, 522 U.S. 93, 103 (1997) ("The Eighth Amendment protects against excessive civil fines, including forfeitures.").

The U.S. Supreme Court concluded thirty years ago that the Excessive Fines Clause extended to civil *in rem* property forfeitures. *Austin*, 509 U.S. at 618. The Ninth Circuit more recently has applied the Excessive Fines Clause in the context of civil penalties for "trafficking" in food stamps, civil fines levied under the Agricultural Marketing Agreement Act, and municipal parking fines. *Vasudeva v. United States*, 214 F.3d 1155, 1161–62 (9th Cir. 2000); *Balice v. U.S. Dept. of Agriculture*, 203 F.3d 684, 698–99 (9th Cir. 2000); *Pimentel v. City of Los Angeles*, 974 F.3d 917, 922 (9th Cir. 2020). The civil nature of Johnson's fine cannot preclude the Court's review under the Eighth Amendment. *Austin*, 509 U.S. at 618. *Pimentel*, 974 F.3d at 922.

## B. Whether Johnson's Civil Fine Qualifies as a Penalty.

"A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Austin*, 509 U.S. at 621. "[A] modern statutory forfeiture is a 'fine' for Eighth Amendment purposes if it constitutes punishment even in part." *United States v. Bajakajian*, 524 U.S. 321, 331 (1998).

The Ninth Circuit in *United States v. Mackby*, for instance, determined that "the civil sanctions provided by the False Claims Act [we]re subject to analysis under the Excessive Fines Clause because the sanctions represent a payment to the government, at least in part, as punishment." 261 F.3d 821, 830 (2001). The statute governing the fine at issue in *Mackby* failed to "specify whether its sanction of $5,000 to $10,000 per claim [wa]s meant to be punitive or remedial." *Id.* The Ninth Circuit applied *Austin* to find that the penalties "clearly had a punitive purpose" due to discrepancy between the government's monetary loss and the sanction amount and because the legislative history confirmed that "the statute has a deterrent purpose." *Id.*

Agency Defendants contend that Johnson's fine constitutes a liquidated damages provision rather than a penalty. (Doc. 38 at 24–25.) Agency Defendants note that Johnson agreed to the damages provision when she signed the contract.

Agency Defendants assert that the fine reflects Congress's attempt to fix just compensation for the anticipated loss of a Program participant's breach.

The fine indeed may qualify as a liquidated damages provision. *See, e.g.*, *United States v. Rondon*, No. 95-CV-0321E(M), 1996 WL 107123, *3 (W.D.N.Y. Feb. 27, 1996) (referring to the fine as a "liquidated damages provision"); *United States v. Turner*, 660 F. Supp. 1323 (E.D.N.Y. 1987) (same). A civil fine provision may constitute liquidated damages, however, while also being punitive, as "sanctions frequently serve more than one purpose." *Kokesh v. S.E.C.*, 581 U.S. 455, 466 (2017).

Johnson's fine reflects, at least in part, an intent to punish or deter conduct rather than merely to provide compensation. *Mackby*, 261 F.3d at 830. The Ninth Circuit additionally has determined that "[t]he penalty for a [medical provider] in breach of the [Program's] obligated service requirement is a heavy one, far exceeding the actual monetary loss to the United States." *United States v. St. Thomas*, 966 F.2d 476, 478–79 (9th Cir. 1992). The Eighth Circuit has described the "treble damages provision of the NHSC program" as "severe and onerous." *Tanko v. United States*, 428 F.3d 730, 733 (8th Cir. 2005). One reviewing court has described the Program's fine provision both as "liquidated damages" and as "punitive." *See, e.g.*, *United States v. Melendez*, 944 F.2d 216, 219 (5th Cir. 1991)

9

(describing the "punitive nature of the liquidated damage provision set out in § 254o(b)").

The statute's legislative history adds further support to a finding that the statutory formula contained in § 254*o* incorporates more than a compensatory purpose. *See* Health Manpower Legis., 1975: Hearings on S. 989 Before the Subcomm. on Health of the Senate Comm. on Labor & Public Welfare, 93d Cong., 2d Sess. 2017 (1975) (statement of Tom E. Nesbitt of American Medical Association describing damages provision as "essentially punitive"). Then-Representative John Kasich also explained the intention behind the fine provision as follows: "I want to make it clear that what we want to do is to take the few who are abusing the system and make sure we get on them . . . . let us make them pay." 133 Cong. Rec. H23617-23618 (Sept. 9, 1987).

Agency Defendants themselves, more importantly, have characterized the fine as furthering "dual goals of compensating the Program for the loss of services in underserved areas, while also disincentivizing participants from reneging on their service obligations." (Doc. 38 at 34 (citing *United States v. Bills*, 822 F.3d 373, 381 (3d Cir. 1987) (Becker, J. concurring)).) The Court determines that Section 254*o*'s statutory fine provision "cannot fairly be said solely to serve a remedial purpose." *Austin*, 509 U.S. at 621. The fine "constitutes punishment [] in part" due to the presence of retributive or deterrent goals alongside any compensatory purpose.

*Bajakajian*, 524 U.S. at 331. The Eighth Amendment potentially applies to Johnson's fine.

### III. Whether Johnson Has Satisfied the Four-Factor *Bajakajian* Test.

The Court next analyzes whether the amount of the fine qualifies as excessive under the Eighth Amendment. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *Bajakajian*, 524 U.S. at 334. A court must hold unconstitutional any government-imposed penalty that proves "grossly disproportional to the gravity of the [] offense[.]" *Id.* at 337.

The Ninth Circuit applies a four-factor test derived from *Bajakajian* to assess the constitutionality of a penalty. The four *Bajakajian* factors are as follows: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel*, 974 F.3d at 922 (citing *Bajakajian*, 524 U.S. at 336–37; *United States v. $100,348 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004)). The Ninth Circuit has confirmed that *Bajakajian* itself "does not mandate the consideration of any rigid set of factors." *Pimentel*, 974 F.3d at 922 (quoting *Mackby*, 339 F.3d at 1016).

#### A. Factor One: Nature and Extent of Underlying Conduct.

A reviewing court first must consider the "nature and extent of the underlying offense." *Pimentel*, 974 F.3d at 922. The Ninth Circuit in *Pimentel* noted that the

11

appellants "[we]re indeed culpable because there is no factual dispute that they had violated a municipal parking code." *Id.* at 923. The Ninth Circuit nonetheless found the appellants' "culpability [to be] low because the underlying parking violation [wa]s minor" and concluded "that the nature and extent of appellants' violations [proved] minimal but not de minimis." *Id.*

Agency Defendants argue that Johnson's breach proves "witting[] and highly culpable." (Doc. 38 at 34.) Agency Defendants emphasize that Johnson knew of the service obligations when she signed the contract; that she "resigned from her qualifying employment"; and that she "has made minimal effort to fulfill her service obligations." (*Id.* at 33.) Johnson alleges that she lost her first Corps-approved assignment at Alluvion in Great Falls due to her supervisor's whistle-blowing activities. (Doc. 10 at 10.) Johnson further contends that she accepted a second Corps-approved position at IFHC in Great Falls. (*Id.*) Johnson alleges that IFHC constructively discharged her due to her unwillingness to violate the law. (*Id.*) The Court lacks sufficient information at this point to evaluate these claims to determine whether Johnson has made a good-faith effort to comply with her contractual obligations to the Program.

As with the appellants in *Pimentel*, the undisputed facts establish that Johnson breached terms of her Program contract. *Pimentel*, 974 F.3d at 923. Johnson's conduct evinces some level of culpability. Johnson's breach of contract involved no

12

violation, however, of any civil or criminal law. Johnson attempted to return the funds shortly after leaving her approved work site. (Doc. 1 at 8.) Johnson has retained the full loan amount in an account. (*Id.* at 11.) Nothing in the record indicates that Johnson possessed any intent to breach the contract when she entered it. Johnson maintains that the breach proves "attributable to [] others' misconduct." (Doc. 34 at 28.) Defendants instead argue that Johnson breached for personal and family reasons, including because of childcare needs. (Doc. 38 at 9.) Johnson's conduct likely would evince a low level of culpability even assuming that Defendants are correct. As in *Pimentel*, the "nature and extent" of Johnson's underlying breach proves "minimal but not de minimis." *Pimentel*, 974 F.3d at 923.

### B. Factor Two: Relation to Other Criminal Conduct.

A court next considers "whether the underlying offense related to other illegal activities." *Pimentel*, 974 F.3d at 922. In the context of civil fines, the second *Bajakajian* "factor is not as helpful to [a court's] inquiry as it might be in criminal contexts." *Id.* at 923. The Ninth Circuit in *Pimentel* limited its analysis of the second factor to an observation "that there [wa]s no information in the record showing whether overstaying a parking meter relates to other illegal activities, nor do the parties argue as much." *Id.*

Agency Defendants argue that the second factor does not apply because Johnson's conduct was not criminal. (Doc. 38 at 34.) Agency Defendants argue, in

the alternative, that this factor weighs in their favor because Johnson's breach implicates the Program's "consistency and integrity." (*Id.*) The Court lacks sufficient information on this record to evaluate Agency Defendants' claims.

Agency Defendants have never attempted to argue that Johnson engaged in illegal or criminal conduct. The impact of Johnson's breach on the Program relates to the fourth *Bajakajian* factor and proves irrelevant to the second factor analysis. The Court finds that the second factor weighs slightly in favor of Johnson due to the lack of any relation to "other illegal activities." *Pimentel*, 974 F.3d at 923.

### C. Factor Three: Other Penalties.

The third factor looks to "other penalties that the Legislature has authorized" and the "maximum penalties that could have been imposed under the Sentencing Guidelines" as proxies for culpability. *$100,348.00 in U.S. Currency*, 354 F.3d. at 1122. Agency Defendants and Johnson agree that no other penalties remain available. (Doc. 38 at 35; Doc. 43 at 30.) Agency Defendants maintain that the statutory formula incorporates proportionality on the basis that it decreases the fine amount in relation to the number of months of service performed. (Doc. 38 at 36.) The formula's multiplier and interest provisions suggest an attempt to exact a higher cost on the breaching participant. Moreover, the formula includes only the total number of days served at a qualifying site, with no effort to consider an individual Program participant's circumstances or culpability. (Doc. 34 at 31–32.) The Court

finds that the third factor proves minimally relevant but weighs slightly in favor of Johnson.

### D. Factor Four: Harm.

Turning to the fourth *Bajakajian* factor, the Court "must determine the extent of the harm caused by the violation." *Pimentel*, 974 F.3d at 923. The Ninth Circuit has observed that "[t]he most obvious and simple way to assess this factor is to observe the monetary harm resulting from the violation." *Id.* A court's analysis "is not limited to monetary harms alone. Courts may also consider how the violation erodes the government's purposes for proscribing the conduct." *Id.* The Ninth Circuit has cautioned that "a narrow focus on monetary harms fail[s] to capture the full scope of the injury." *Id.* at 923.

Agency Defendants have made no attempt to quantify the monetary value of Johnson's breach. Agency Defendants argue instead that the harm of Johnson's breach proves extensive and impossible to quantify. (Doc. 38 at 37.) Agency Defendants additionally assert that Johnson's decision to stay in Great Falls "subverts" the Program. (*Id.* at 38.) Agency Defendants highlight that the Program seeks to "ensure that the public obtain[s] the services of trained health care professionals in areas of need." (*Id*. at 39 (internal citation omitted).)

Agency Defendants rely upon *United States v. Redovan*, a 1987 decision from the Eastern District of Pennsylvania. 656 F. Supp. 121, 128 (E.D. Pa. 1986), *aff'd*

15

826 F.2d 1057 (3d Cir. 1987). The district court in *Redovan* noted that the Program participant's "selfish conduct result[ed] in additional burdens on those already overburdened doctors providing medical care in [a] health manpower shortage area to which [the participant] was assigned." *Id. Redovan* further observed that the breach "require[d] citizens in that area to continue to suffer for the lack of adequate numbers of trained medical professionals" and undermined the "goal of curing the maldistribution of medical care in the nation." *Id.*

Johnson has sought to return the Program funds and retains the full loan amount in an account. (Doc. 1 at 11.) The Government has experienced no direct financial loss. Agency Defendants' arguments about potential societal harm caused by Johnson's breach prove more difficult to analyze. Johnson, unlike the Program participant in *Redovan*, has not forced people in the Great Falls community "to continue to suffer for the lack of adequate numbers of trained medical professionals" in the area. 656 F. Supp. at 128. Johnson has remained in Great Falls, the same community in which she began her service obligation. (Doc. 29 at 457; Doc. 34 at 33–35.) Great Falls remains designated as a Health Professional Shortage Area. (Doc. 29 at 685–89.) Johnson alleges that she continues to provide medical services to mostly low-income patients. (*Id.* at 457, 691.) The record presented at this point makes it difficult to evaluate whether Johnson's conduct undermines the Program's

laudable "goal of curing the maldistribution of medical care in the nation." *Redovan*, 656 F. Supp. at 128.

The Court notes that the National Student Legal Defense Network and three Program participants facing fines filed an administrative petition with DHHS on August 8, 2022. Pet. to Amend Regs. Governing Penalties & Waivers Under the National Health Services Corps Loan Repayment Program, *In re: National Health Service Corps Loan Repayment Program*, (Aug. 8, 2022), http://www.defendstudents.org/news/body/2022.08.08-Student-Defense-Petition-for-Rulemaking-to-HHS-re-NHSC-Loan-Repayment-Program.pdf. The petitioners have charged that these fines, beyond "hurt[ing] Program participants," "also deter[] future participation by healthcare professionals who have heard of and fear injustice from an unyielding government agency." *Id.* at 12. The petitioners have urged DHHS to amend its regulations to broaden the considerations for a waiver of Program obligations to include "[a] participant's inability to relocate for reasons such as childcare obligations, custody, family obligations, and financial circumstances;" "[t]he extent to which the participant was at fault for the termination of their employment;" and "[a] participant's inability to fulfill work obligations due to medical or family reasons." *Id.* at 24. The Court has been unable to verify the status of the administrative petition. The Court directs the parties to file a

17

supplemental brief with any update related to the disposition or current status of the administrative petition and its relevance to this matter.

Johnson currently faces a fine at least $183,898.29. Johnson alleges that she remains in an underserved community and continues to provide medical services to low-income and rural patients. The Court determines that it would be imprudent to evaluate properly the four *Bajakajian* factors based on the limited record presented. The fine amounts potentially to an excessive civil penalty in violation of the Eighth Amendment. *Id.*; *Austin*, 509 U.S. at 609. The Court cannot make this evaluation, however, based on the record currently presented. The Court will deny Johnson's motion for summary judgment (Doc. 33) and deny Agency Defendants' cross-motion for summary judgment (Doc. 37).

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Plaintiff Johnson's Motion for Summary Judgment (Doc. 33) is **DENIED.**

2. Agency Defendants' Motion for Summary Judgment (Doc. 37) is **DENIED.**

3. The parties shall file supplemental briefs, not to exceed 10 pages, regarding the status of the administrative petition filed by the National Student Legal Defense Network in *In re: National Health Service Corps Loan Repayment Program*, no later than 5:00 P.M. on May 31, 2023.

DATED this 24th day of May, 2023.

_____
Brian Morris, Chief District Judge
United States District Court